| | |
|---|---|
| LAUREN CARLSON, a Minor, by her Mother, JEAN STUCZYNSKI, and NATALIE HALLORAN, <br><br> Plaintiffs, <br><br> v. <br><br> BREMEN HIGH SCHOOL DISTRICT 228; Superintendent RICH MITCHELL, in his Individual Capacity; Dean LILLIE HOLMAN, in Her Individual Capacity; Teacher PAIGE SHEMOSKI, in Her Individual Capacity, <br><br> Defendants. | No. 05 C 6194 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Lauren Carlson ("Carlson") and Natalie Halloran ("Halloran") were students at Oak Forest High School ("Oak Forest") in April of 2005. At that time, Defendant Rich Mitchell ("Mitchell") was the Superintendent of Bremen High School District 228 (the "School District"), Defendant Lillie Holman ("Holman") was Dean of Oak Forest, and Defendant Paige Shemoski ("Shemoski") was a physical education teacher at Oak Forest. Plaintiffs were enrolled in Shemoski's class. Carlson and Halloran allege that on April 11, 2005, Holman conducted an unconstitutional search of Plaintiffs as Shemoski's physical education class concluded. Plaintiffs allege that Holman compelled both Plaintiffs, in her presence and in view of one another, to remove their gym shorts,

gym shirts and underclothes, and to stand naked before her and shake out their gym clothes. Plaintiffs were told by Holman, according to their complaint, that they were being ordered to undress because another student in their physical education class reported $60 missing, and Plaintiffs were the last students seen in the locker room.

Plaintiffs have brought claims against all Defendants under 42 U.S.C. § 1983 (Count I of Plaintiffs' Complaint), alleging violations of their rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution,[1] and the Illinois School Code, 105 ILCS 5/10-22.6(e)(Count II); an invasion of privacy claim against the School District, Holman and Shemoski (Count III); and common law negligent infliction of emotion distress and intentional infliction of emotional distress claims against Holman and Shemoski only (Counts IV and V, respectively). Plaintiffs have brought their claims against the individual defendants in their individual capacities. Defendants have, in turn, brought a motion to dismiss Plaintiffs' complaint, in its entirety, under Federal Rule of Civil Procedure 12(b)(6). As explained below, I grant Defendants' motion in part and deny it in part.

---

[1] The parties do not address the Fifth or Sixth Amendment claims in their motion to dismiss. Neither appears to be implicated by the facts alleged in the complaint.

I.

In assessing Defendants' motion to dismiss, I must accept all well-pleaded facts in Plaintiffs' complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). I must view the allegations in the light most favorable to the Plaintiffs. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal is proper only if the Plaintiffs can prove no set of facts to support their claims. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). My review is limited to the pleadings on file, so I must exclude from my analysis any factual assertions either party made in their papers related to the motion to dismiss. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996).

II.

I first address Plaintiffs' constitutional claims. Defendants contend that Plaintiffs' allegations, even if true, did not violate Plaintiffs' rights under the Fourth and Fourteenth Amendments. Under *New Jersey v. T.L.O*, 469 U.S. 325 (1985), "a search of a student by a teacher or other school official is 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341-42. However, the method of the search must be "reasonably

3

related to the objectives of the search" without being "excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* Under the facts as alleged in Plaintiffs' complaint, Plaintiffs could establish a constitutional violation. Plaintiffs allege that Holman forced them to take off all of their clothing, in her presence and in each others' presence, in order to determine whether they had stolen $60 from a fellow classmate. According to their allegations, Holman's suspicions were based solely on her belief that Plaintiffs were the last students in the locker room before the money was reported missing. If true, this would not be enough to give Holman individualized, reasonable suspicion to conduct the searches. Searches such as the one allegedly conducted by Holman require individualized suspicion. *Cornfield v. Consol. High Sch. Dist.*, 991 F.2d 1316, 1323 (7th Cir. 1993)(affirming permissibility of a strip search where defendants observed plaintiff's erratic behavior and had evidence of recent incidents concerning plaintiff's use of drugs); *Bell v. Marseilles Elementary Sch., et al.*, 160 F. Supp.2d 883, 887 (N.D. Ill. 2001)(Conlon, J.)(finding strip searches of a group of students to be unconstitutional where, even though an officer knew that one student had stolen money, that officer had no individualized suspicion that a particular student had done so).

As alleged in Plaintiffs' complaint, Holman's only reason for suspecting that Plaintiffs were responsible for taking the missing

4

money was her belief that Plaintiffs were the last of Shemoski's students to leave the locker room, but this does not establish that Plaintiffs had any greater opportunity than any other person to take the missing money. This is not sufficient to provide a reasonable suspicion that Plaintiffs were responsible for the purported theft or that searching them would reveal evidence of a crime. Further, under the facts as described by Plaintiffs, the strip searches would also fail the balancing test articulated in *T.L.O.*, given the invasiveness of the search and the relatively unserious nature of the infraction. *T.L.O.*, 469 U.S. at 341-42. *See also Doe v. Renfrow*, 631 F.2d 91, 93 (7th Cir. 1980) (per curiam) (not specifically reaching the issue of whether school officials had justification for strip-searching a junior high student, as the issue was not argued on appeal, but expressing confidence that "a nude search of a thirteen-year-old child is an invasion of constitutional rights of some magnitude"); *Bell*, 160 F. Supp.2d at 889 (holding that conducting strip searches in order to prevent thefts on school property is unreasonable); *Konop v. Northwestern Sch. Dist.*, 26 F. Supp.2d 1189, 1196 (D. S.D. 1998) (finding that the strip searches of two students to investigate the theft of $200 are not reasonable); *Oliver v. McClung*, 919 F. Supp.

1206 (N.D. Ind. 1995) (finding unreasonable the strip search of students to recover a small amount of stolen money).[2]

A forced strip-search in the presence of a school administrator and another student is not, as Defendants characterize it, sufficiently "similar" to a student voluntarily changing from gym clothes into school clothes to avoid affording the subject of such a search some measure of constitutional protection. Students in physical education class are free to take measures to dress as privately as possible, including not removing their underwear, turning away from other students or teachers, undressing quickly, or changing in a bathroom stall. The fact that Plaintiffs' complaint is vague as to whether Holman ever physically touched the Plaintiffs during the alleged search is also irrelevant; a strip search in which students are visually inspected by school officials still may be invasive enough to qualify as a constitutional violation absent sufficient justification for the search. *See Cornfield*, 991 F.2d at 1321, n.1 (explaining, as common sense would suggest, that it is self-consciousness about one's body that renders a strip-search invasive for a high-school-aged child, regardless of the level of touching associated with the

---

[2] As other courts have recognized, a strip search may be reasonable in circumstances in which it reveals evidence of more serious crimes such as those involving drugs or weapons, but "a highly intrusive search in response to a minor infraction [does not] comport with the sliding scale advocated by the Supreme Court in *T.L.O.*." *Cornfield*, 991 F.2d at 1320.

search). Through discovery Defendants may be able to refute Plaintiffs' allegations, but as articulated in their complaint Plaintiffs have stated a claim for a § 1983 violation.[3]

III.

Defendants also argue that, even if Plaintiffs' complaint alleges a violation of Plaintiffs' rights to be free from unlawful searches, the individual Defendants are protected by qualified immunity. Qualified immunity is an affirmative defense which protects public officials from civil liability where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). Here, according to the

---

[3] Defendants also contend, citing *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987), that Plaintiffs' claims against all individual defendants should be dismissed because they are duplicative of claims against the School District. Although Plaintiffs have explicitly sued the individual defendants in their individual capacities (Plaintiffs' Complaint ¶¶ 5-7), Defendants contend that I should treat the individual defendants as defendants in their official capacities because the Plaintiffs do not allege that the individual defendants acted outside the scope of their employment. This is not a requirement. Indeed, where a complaint does not specify whether a defendant is being sued in her individual or official capacity but does allege the defendant acted under color of state law and not in keeping with any official governmental policies or customs, the Seventh Circuit has treated the claim as one against the defendant in his individual capacity. *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). Plaintiffs' claims are properly pleaded as claims against the individual defendants in their individual capacities. For this same reason, Defendants' argument that Plaintiffs' claims for punitive damages cannot proceed because Defendants are sued in their official capacities must fail.

facts as alleged by the Plaintiffs, Holman conducted an invasive strip search of Plaintiffs without individualized suspicion that they had committed a crime. The Seventh Circuit has previously determined that qualified immunity does not protect educators from liability for the strip searches of students where the educator lacks reasonable cause to believe that the student has committed a crime. *Doe*, 631 F.2d at 92. For this reason, Defendants are not afforded the benefit of the qualified immunity defense at this stage of the case.

IV.

Although Plaintiffs' complaint states a claim under § 1983 against Holman, it does not state a claim against any of the other Defendants. Plaintiffs have not alleged that they were searched pursuant to any official policy or custom of the School District, as required by *Monell v. Dep't of Soc. Serv.*, 435 U.S. 658, 694 (1978). Although Plaintiffs state in their complaint that Dean Kevin Donegan of Oak Forest contacted the police to request a female officer search the Plaintiffs, Plaintiffs do not allege that Dean Donegan articulated any particular policy with respect to the ultimate strip-search of the Plaintiffs, or that Dean Donegan possessed final authority to establish any policy with respect to their search. Likewise, Plaintiffs do not allege that Mitchell had any knowledge of or involvement in the search of Plaintiffs. Plaintiffs do imply that Shemoski was involved in identifying

Plaintiffs as potential suspects in the theft of the money, and that she was in the locker room immediately before the searches took place. However, they do not specifically allege that she had involvement in or was present during the strip search of Plaintiffs. Consequently, Plaintiffs' § 1983 claims against the School District, Mitchell, and Shemoski must be dismissed.

V.

Defendants also contend that Plaintiffs' claims under the Illinois School Code, 105 ILCS 5/10-22.6(e) (West 2005) should be dismissed because this statute does not provide a private right of action. In Plaintiffs' response to Defendant's Motion to Dismiss, Plaintiffs have not addressed this argument.

Count II of Plaintiffs' Complaint alleges that Defendants "abused their discretion" under 105 ILCS 5/10-22.6(e). That statute provides in relevant part:

> To maintain order and security in the schools, school authorities may inspect and search places and areas such as lockers, desks, parking lots, and other school property and equipment owned or controlled by the school, as well as personal effects left in those places and areas by students, without notice to or the consent of the student, and without a search warrant. As a matter of public policy, the General Assembly finds that students have no reasonable expectation of privacy in these places and areas or in their personal effects left in these places and areas. School authorities may request the assistance of law enforcement officials for the purpose of conducting inspections and searches of lockers, desks, parking lots, and other school property and equipment owned or

9

> controlled by the school for illegal drugs, weapons, or other illegal or dangerous substances or materials, including searches conducted through the use of specially trained dogs. . . . The provisions of this subsection (e) apply in all school districts, including special charter districts and districts organized under Article 34.

105 ILCS 5/10-22.6(e).

This Court can find no authority, either in this Circuit or under Illinois law, granting a private right of action to proceed under any section of the Illinois School Code. In fact, at least one court has determined that another section of the Illinois School Code explicitly does not provide an implied private right of action. *See Woods v. East St. Louis Sch. Dist.*, 147 Ill. App. 3d 776, 498 N.E.2d 801, 101 Ill. Dec. 477 (Ill. App. Ct. 1986) (finding no implied private right of action under 105 ILCS 5/22-9).

In order to find an implied private right of action under Illinois law, a court must find that such a right is consistent with the underlying purpose of the legislation and is necessary to achieve the aim of the legislation. *Porter v. Bd. of Educ. of the City of Chicago*, 837 F. Supp. 255, 257 (N.D. Ill. 1993)(Nordberg, J.)(citing *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 386, 432 N.E.2d 849, 852, 59 Ill. Dec. 905, 908 (1982)). The Illinois Supreme Court in *Sawyer* applied the following five part test to determine if a particular statute had an implied private right of action:

> (1) Does the violation alleged contravene the public policy of the State? (2) Are the plaintiffs within the class the statute was designed to protect? (3) Is the injury one the statute was designed to prevent? (4) Is the need for civil actions under the statute clear? (5) Is there any indication that remedies available are limited to those enumerated in the Act?

*Sawyer*, 89 Ill.2d at 389, 432 N.E.2d at 853, 59 Ill. Dec. at 909.

While the actions described in Plaintiffs' complaint, if true, would surely violate Illinois public policy, it is not clear that the other prongs of this test are met in this case. The statute is designed to maintain order and security in schools, and therefore to protect schools and their inhabitants by allowing searches of school property. See 105 ILCS 5/10-22.6(e). Strip searches of students, while potentially reprehensible, are not addressed by the statute. It appears that this portion of the Illinois School Code was designed, not to prevent strip searches, but rather to clearly articulate students' expectations of privacy for personal property left in public school areas. Therefore, I cannot conclude that this statute allows for a private right of action. Plaintiffs, by providing this Court with no arguments opposing Defendants' motion, appear to concede that this is correct. *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) (treating as waived an issued raised in defendants' motion to dismiss that plaintiff did not address). *See also Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) (noting that upon a motion

11

to dismiss, "the nonmoving party must proffer some legal basis to support his cause of action" and that the court should not "invent legal arguments for litigants"); *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002) (holding that for purposes of a motion to dismiss, a court need not "accept as true legal conclusions or unsupported conclusions of fact"). Count III of Plaintiffs' Complaint is therefore dismissed.

## VI.

Plaintiffs have also brought claims for invasion of privacy, negligent infliction of emotional distress and intentional infliction of emotional distress. Defendants argue that these claims should be dismissed because Defendants are protected by the Illinois School Code, 105 ILCS 5/24-24 and the Illinois Governmental Tort Immunity Act, 745 ILCS 10/2-101 *et seq.*

Under the Illinois School Code teachers are not liable to students for ordinary negligence but are liable for willful and wanton misconduct. 105 ILCS 5/24-24;[4] *Kobylanski v. Chicago Board*

---

[4] This statute provides, in relevant part:

[T]eachers, other certificated educational employees, and any other person, whether or not a certificated employee, providing a related service for or with respect to a student shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program, including all athletic and extracurricular programs, and may be exercised at any time for the safety and supervision of the pupils in the absence of

*of Education*, 63 Ill.2d 165, 173, 347 N.E.2d 705, 709 (1976). Likewise, under the Illinois Governmental Employees Tort Immunity Act, public employees "serving in a position involving the determination of policy or the exercise of discretion" are not liable for their wrongful acts unless those acts are willful and wanton. 745 ILCS 10/2-201, 210. For purposes of this statute, willful & wanton means "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Plaintiffs have alleged that Defendants acted intentionally, wantonly and willfully. Plaintiffs are not required to articulate a more specific theory of wanton and willful behavior at this stage of the litigation. Federal notice pleading merely requires that knowledge, intent, and other conditions of the mind be averred generally. Fed. R. Civ. P. 9(b). *See also Bennett v. Schmidt*, 153 F.3d 516 (7th Cir. 1998) (discussing generally the requirements of federal notice pleading).[5]

---

their parents or guardians.

105 ILCS 5/24-24.

[5] For this same reason, Defendants' argument that Plaintiffs have not adequately pled facts indicating that punitive damages are appropriate must fail. Plaintiffs may obtain punitive damages if they can demonstrate that Holman acted with intentional, reckless or callous disregard for Plaintiffs' rights. *Smith v. Wade*, 461 U.S. 30, 51 (1983). Plaintiffs have generally alleged facts from which a finder of fact could conclude this was the case. *See*

13

As with Plaintiffs' § 1983 claim, however, while Plaintiffs' complaint implicates Holman in the wrongful strip search, it does not describe the involvement of the School District, Mitchell, or Shemoski. Even under the broad standards of federal notice pleading, Plaintiffs have not sufficiently described how any other Defendants were involved in or responsible for the searches. For this reason, I dismiss Counts III, IV and V as to Defendants other than Holman.

## CONCLUSION

For the foregoing reasons, I dismiss all claims against the School District, Mitchell and Shemoski, and dismiss Count II of Plaintiffs' complaint.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: March 29, 2006

---

*Bennett v. Schmidt*, 153 F.3d at 518 ("[A] complaint is not required to allege all, *or any*, of the facts logically entailed to the claim. . . A plaintiff does not have to plead evidence. . .") (quoting *Am. Nurses' Assoc. v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986)).